UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Amer Gilani, | |
| Plaintiff, | |
| v. | CASE NO.: 1:19-cv-00827-JRN |
| Javitch Block LLC, | |
| Defendant. | |

MEMORANDUM IN SUPPORT OF
DEFENDANT JAVITCH BLOCK LLC's SECOND MOTION TO DISMISS

**I.     INTRODUCTION**

Plaintiff Amer Gilani (Gilani), through counsel, commenced this action on August 21, 2019, by filing a two-count complaint against Javitch Block LLC ("Javitch"), alleging a violation of the Fair Debt Collection Practices Act (FDCPA) and Texas Debt Collection Act (TDCA). Doc. No. 1, *passim*.  On October 8, 2019, Javitch moved to dismiss the complaint for failure to state a claim. Doc. No. 10. On October 18, 2019, in response to the motion, Gilani filed an amended complaint as of right, setting forth a single claim under the FDCPA. This motion followed.

**II.    STATEMENT OF FACTS**

Rather than respond to a May 10, 2019 letter Javitch sent Plaintiff Gilani concerning an account owed to Access Group, Inc., on August 21, 2019, Gilani filed this action alleging Javitch made false representations as to the character or amount of the debt in the letter, in violation of the FDCPA and TDCA, 15 U.S.C. § 1692e(2);Tex. Fin. Code Ann. § 392.304.  Doc. No 1 ¶¶ 23, 26.

In an effort to resolve this matter, on September 4, 2019, Javitch, through the undersigned counsel, called and spoke with Plaintiff's counsel and agreed to provide Javitch's Fed.R.Civ.P. 26(a)(1)(ii) initial disclosures, to defend the claim and to show the FDCPA claim was meritless as

1

the loan was in fact due and owing in the amount claimed. See September 4, 2019 email attached as Exhibit A, pp. 2-3; initial disclosures attached as Exhibit B. Consisting of 25 pages, those documents included, among other things:

A.     An Application and Loan Agreement signed by Amer Gilani dated 8-14-03, stating in pertinent part: "I promise to pay, to the order of the Lender, the principal sum advanced to me or paid on my behalf, together with interest thereon and all other amounts provided for in the Statement of Terms." Exhibit B, JBLLC 001

B.     Loan Terms and Conditions, addressing among other terms, a choice of law clause stating "My Application and Loan Agreement will be entered into in Ohio. Your decision to lend me money will be made in Ohio. CONSEQUENTLY, THE PROVISIONS OF MY LOAN WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES." Exhibit B, JBLLC 004.

C.     Truth in Lending Disclosure Statement, reflecting a disbursement of $13,400 for attendance at the University of Texas, subject to a variable interest rate. Exhibit B, JBLLC 005.

D.     Record of repayment, showing a payments from March 2007 through March 29, 2015, followed by seven payments in 2016. Exhibit B, JBLLC 013-017 (2007-2012), 010-011 (2012-2015), 018 (2016).

E.     A copy of a state court pleading captioned "original petition" listing Access Group, Inc as Plaintiff and "Amer S Gilani AKA Amer Gilani" as Defendant, consisting of seven pages (including the signed agreement and loan terms). Exhibit B, JBLLC 019-025.

Rather than dismiss, Plaintiff's counsel responded by coming up with a new theory of liability, not based on the letter about which Gilani originally complained. Instead, the amended complaint filed on October 18, 2019, concerns itself with an excerpt of Javitch's September 4,

2019 initial disclosures sent to Gilani's counsel, attached as Exhibit 1 to the complaint (sans the complaint's exhibits). Doc. No. 11, pp. 6-8 (pages JBLLC 019-021).  Gilani's amended complaint asserts that Exhibit 1 was provided to Gilani's counsel by email "as part of Javitch's initial disclosures in this case," purporting to be a complaint Javitch filed in the Williamson County, Texas Court on August 26, 2019, case number 19-1287-C26, concerning the Access Group debt. Doc. No. 11 ¶¶ 5, 6, 7.  The amended complaint does not allege the citation or complaint was ever served on Gilani.[1]

The amended complaint goes on to allege the debt concerned a student loan incurred for personal, family or household purposes; that sending Exhibit 1 as part of its initial disclosures by email to Gilani's counsel in this case was an attempt to collect the student loan debt; and that Javitch falsely represented the character of the debt in violation of 15 U.S.C. § 1692e(2)(A), because either the date of default stated in paragraph 8 of the complaint (March 29, 2015) was wrong, or if correct, the debt was time-barred and judicially unenforceable. Doc. No. 11, ¶¶ 7-9, 12-13, 21-25.

## III.    STANDARD OF REVIEW – MOTION TO DISMISS

Under Fed.R.Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In order "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the

---

[1] As an aside, Javitch points out that the state court complaint has yet to be served on Gilani.

speculative level.'" *Twombly*, 550 U.S. at 555; *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir. 2007).

While "well-pleaded factual allegations [are accepted] as true and [courts] interpret the complaint in the light most favorable to the plaintiff, … '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc*., 833 F.3d 512, 520 (5th Cir. 2016)(internal references omitted).

In passing on a motion to dismiss, the Court may consider the complaint, documents attached to the complaint, documents referenced in the complaint, and matters which may be judicially noticed. *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 735 (5th Cir. 2019). "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Id. See also Manuel v. Merchants & Prof'l Credit Bureau, Inc*., No. 1:18-CV-226-LY, 2019 WL 122060, at *1, n.2 (W.D. Tex. Jan. 7, 2019). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002).

The documents attached hereto as Exhibit A and B are referred to in but not attached to the amended complaint. Doc. No. 11 ¶ 7. The document attached hereto as Exhibit C is a continuation of the same email exchange referred to in ¶ 7.

## IV.    STANDARD APPLICABLE TO CLAIMS UNDER THE FDCPA

For the FDCPA to apply, two threshold criteria must be met. First, the defendant must qualify as a "debt collector," and second, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any [a] debt" or as part

of an "attempt to collect any debt." 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f, 1692g. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir.2010); *Billups v. Retail Merchants Ass'n, Inc.*, 620 F. App'x 211, 214 (5th Cir. 2015); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Flinn v. Michael J. Scott, P.C.*, No. 3:14-CV-0701-N, 2014 WL 11460395, at *3 (N.D. Tex. Dec. 2, 2014)(following *Gburek*).

To determine whether or not a communication is made in connection with collection, "courts have developed a factor-based analysis that takes into account: '(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.' " *McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) (*quoting Bohringer v. Bayview Loan Servicing, LLC*, 141 F.Supp.3d 1229, 1240–41 (S.D. Fla. 2015); *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2013 WL 3949023, at *4 (N.D. Tex. Aug. 1, 2013)(agreeing "a court should examine multiple factors"); *Flinn v. Michael J. Scott, P.C.,* No. 3:14-CV-0701-N, 2014 WL 11460395, at *3 (N.D. Tex. Dec. 2, 2014)(observing *Gburek* employs a multifactor analysis, citing three factors).

15 U.S.C. § 1692e provides, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
> (2) The false representation of—(A) the character, amount, or legal status of any debt[.]

15 U.S.C. § 1692e(2)(A).

In determining whether a debt collector violates § 1692e of the FDCPA, courts should first address whether the letter contains anything materially inaccurate; because, "[i]f …[the] representation is accurate, i.e., not 'false ... or misleading,' it would make scant sense to rank [it] as unlawful…." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1601, 194 L. Ed. 2d 625 (2016). *See also Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *5 (W.D. Tex. June 24, 2016)("The ultimate question … is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced their decision-making.").

Courts typically apply an objective standard, measured by how the "least sophisticated consumer" or "unsophisticated consumer" would interpret the notice. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). Whether or not the wording of a collection letter is misleading to the "least sophisticated consumer" presents a question of law appropriate for disposition in a motion to dismiss "when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it," but otherwise presents a question of fact. *Daugherty v. Convergent Outsourcing, Inc.,* 836 F.3d 507, 512, *quoting and approving McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014).

While much ink has been spilled in recent years on the evils of collecting on or suing on a debt one knows or should know is barred by the statute of limitations, most courts agree that if a good faith basis exists to bring a claim into court, an attorney cannot be penalized under the FDCPA for doing so. *Simmons v. Miller*, 970 F. Supp. 661, 664 (S.D. Ind. 1997) (FDCPA not applicable to a collection suit that may not have been time barred due to lack of clarity as to what limitations apply under Indiana law); *Almand v. Reynolds & Robin, P.C.*, 485 F. Supp. 2d 1361, 1367 (M.D. Ga. 2007) ("the uncertainty regarding exactly which statute of limitations applies

results in a finding of no violation of the FDCPA ...."); *McCorriston v. L.W.T., Inc.*, 536 F.Supp.2d 1268, 1275 (M.D.Fla.2008); *Hare v. Hosto & Buchan, PLLC*, 774 F. Supp. 2d 849, 856 (S.D. Tex. 2011)(dismissing claim on summary judgment under bona fide error defense after finding law applicable to state claim unsettled); *Uche v. N. Star Capital Acquisition, LLC*, No. 4:09CV3106, 2011 WL 978240, at *2 (D. Neb. Mar. 17, 2011); *Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1289 (E.D. Wash. 2015). Moreover, the Consumer Financial Protection Bureau's recent proposed Regulation F mirrors this standard by prohibiting suits on claims a debt collector knows or should know to be time-barred. *Advanced Notice of Proposed Rulemaking – Regulation F,* 84 Fed. Reg. 23274, 23327-23329 (May 21, 2019), 12 CFR Part 1006—Debt Collection Practices (Regulation F), 12 C.F.R. § 1006.26(b)("A debt collector must not bring or threaten to bring a legal action against a consumer to collect a debt that the debt collector knows or should know is a time-barred debt.").

    *Kimber v. Fed. Fin. Corp.*, one of the earliest cases concluding that maintaining a time-barred suit was unfair or deceptive within the meaning of the FDCPA, relied on cases applying Fed. R. Civ. P. 11 (Rule 11) to the conduct of an attorney who brought or maintains a time-barred lawsuit. 668 F. Supp. 1480, 1487-89 (M.D. Ala. 1987).  Case law developed under Rule 11 and 28 U.S.C. § 1927 establish that an attorney may be sanctioned for filing or maintaining a time-barred lawsuit either: (a) without conducting a pre-filing inquiry into whether the statute of limitations had run,[2] or (b) lacked a non-frivolous good faith basis for arguing that the statute of limitations does not bar the action,[3] or (c) persisted in maintaining the action after notice of the limitations

---

[2] *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).

[3] *Smith v. Nat'l Health Care Servs. of Peoria*, 934 F.2d 95, 96–97 (7th Cir. 1991); *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987); *Dufour v. Allen*, 680 F. App'x 538, 541 (9th Cir. 2017); *Salois v. Dime Sav. Bank of New York, FSB*, 128 F.3d 20, 28 (1st Cir. 1997).

defense.[4] Sanctions do not automatically follow for all unsuccessful suits,[5] courts avoid using the wisdom of hindsight,[6] measuring the conduct against reasonableness.[7]

Likewise, while collection of a time-barred debt is not, in and of itself an FDCPA violation, the potential for violations arises from the potential misleading substance of the communication. *Manuel v. Merchants & Prof'l Credit Bureau, Inc*., No. 1:18-CV-226-DAE, 2019 WL 3713750, at *9 (W.D. Tex. Aug. 5, 2019), appeal pending 5th Cir. case no. 19-50184 ("The question is not whether the mere fact that Defendant attempted to collect the debt was a violation of the FDCPA (it is not a violation). The question is rather whether the methods employed by Defendant—the allegedly misleading substance of their letters—violate the FDCPA.").

And yet, if the communication accurately conveys the time-barred nature of the claim to a person with sufficient business or legal acumen, the communication "does not fall within the scope of any of the five relevant words of the Fair Debt Collection Practices Act… "false, deceptive, or misleading[, unfair or unconscionable]." *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411, 197 L. Ed. 2d 790 (2017); *Lee v. Javitch, Block & Rathbone LLP*, 601 F.3d 654, 657, n. 2 (6th Cir. 2010).

Finally, FDCPA claims premised on written communications from debt collectors require consideration of the whole writing, rather than snippets taken out of context or in isolation in assessing whether the claim has merit. *Manuel*, 2019 WL 3713750, at *5.

---

[4] *Brubaker v. City of Richmond*, 943 F.2d 1363, 1384 (4th Cir. 1991); *White v. General Motors Corp*., 908 F.2d 675, 682 (10th Cir.1990).

[5] *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 507 (6th Cir. 1998).

[6] *Gaiardo v. Ethyl Corp*., 835 F.2d 479, 484 (3d Cir. 1987); Fed.R.Civ.P. 11 advisory committee's note to 1983 Amendment ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.").

[7] *Id*.

## V.   ARGUMENT

## A.   EXHIBIT 1 IS NOT ACTIONABLE UNDER THE FDCPA BECAUSE IT WAS PROVIDED AS PART OF INITIAL DISCLOSURES IN RESPONSE TO A REQUEST FROM OPPOSING COUNSEL IN AN EFFORT TO RESOLVE FEDERAL LITIGATION

Rule 26 of the Federal Rules of Civil Procedure requires each party to provide, without awaiting a discovery request, copies of or descriptions of all documents the party intends to use to support its defense.  Fed.R.Civ.P. Rule 26(a)(1)(A)(ii). As noted in the 1993 Advisory Committee Notes, this requirement was intended to facilitate and accelerate sharing of basic information so that parties could make informed decisions about settlement. 1993 Advisory Committee Notes to Fed.R.Civ.P. Rule 26. ("this subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement….A major purpose of the revision is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives.").

Gilani's FDCPA claim perverts this mandatory disclosure requirement because it seeks to penalize Javitch for disclosing information designed to illuminate the meritless nature of Plaintiff's initial FDCPA and TDCA claims. Not only does this undermine the values underlying Rule 26, it does not further the purposes of the FDCPA. See 15 U.S.C. § 1692(e).

Numerous courts have recognized that when information is provided by the defendant in response to a request from the Plaintiff or Plaintiff's counsel, no action lies under the FDCPA for making such disclosures. *See Meraz v. M. Susan Rice, P.C.*, No. SA-09-CA-138-OG, 2009 WL 10669232, at *3 (W.D. Tex. May 15, 2009)(communications between attorneys not actionable under the FDCPA); *Lee v. Cohen, McNeile & Pappas, P.C.*, 520 F. App'x 649, 651 (10th Cir.

9

2013)(communications by counsel for Defendant in response to threat of litigation were not debt collection communications); *Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 787 (S.D. Miss. 2008)(responding to request for information does not constitute debt collection); *McElveen v. Westport Recovery Corp.,* 310 F. Supp. 3d 1374, 1381 (S.D. Fla. 2018) (communication in response to inquiry as to amount owed was not within the ambit of the FDCPA).

As a consequence, Javitch urges the Court to find the documents provided to Plaintiff's counsel as part of Javitch's initial disclosures are not actionable under the FDCPA.

**B.     EXHIBIT 1 WAS NOT A COMMUNICATION IN CONNECTION WITH COLLECTION OF THE DEBT**

Even if this Court were to conclude that Exhibit 1 is actionable under the FDCPA, the Court should nonetheless find that Gilani's FDCPA claim fails as a matter of law because Exhibit 1 was not a communication in connection with the collection of a debt – a predicate requirement for this FDCPA claim. *Gburek, supra*; *Billups, supra*; *Grden, supra*; *Flinn, supra*.

It is undisputed that Exhibit 1 (an excerpt of Exhibit A) was emailed as part of Javitch's initial disclosures (*see* bates numbers in footer); it was never served on Plaintiff and was only provided to counsel via email in response to Plaintiff's initial complaint and request for information, contesting the amount of his debt. *See* Exhibit A; Exhibit C, p. 2, September 4, 2019 11:11 AM email from Mr. Hickle to the undersigned ("Thank you for providing these documents. I have no interest in pushing a losing case. I will get with my client and see what he has to say.").

The email itself and the documents contained in the initial disclosures clearly do not contain a demand for payment; the nature of the parties' relationship was such that the information was required to be provided under Fed.R.Civ.P. 26; and the objective purpose and context of the communications makes clear the information was provided in response to a request for the information to facilitate settlement of this federal litigation not to collect the debt. In sum, it did

not constitute a communication in connection with the collection of any debt. *Flinn v. Michael J. Scott, P.C.*, No. 3:14-CV-0701-N, 2014 WL 11460395, at *3; *Lindley v. TRS Recovery Assocs., Inc.,* No. 2:12-CV-109, 2012 WL 6201175, at *5 (S.D. Tex. Dec. 12, 2012).

For these reasons, the Court should find that construed as a whole, the information in Exhibits A and B, including the excerpt appearing in Exhibit 1, is not, in the context of this case, a communication in connection with the collection of any debt.

## C.     PARAGRAPH 8 OF EXHIBIT 1 IS TRUE, AND IS NOT MATERIALLY FALSE, DECEPTIVE OR MISLEADING

The payment records provided to Plaintiff's counsel as part and parcel of Javitch's initial disclosures show payments from March 2007 through March 29, 2015, followed by seven "post default" payments in 2016. Exhibit B, JBLLC 013-017 (2007-2012), 010-011 (2012-2015), 018 (2016). In short, between March 29, 2015 and March 31, 2016, Gilani ceased making payments and permanently ceased paying as of September 15, 2016. The Terms and Conditions governing the loan make crystal clear that failure to pay when due amounts to a default. JBLLC 004, ¶ J(1).

At the same time, the documents included in the initial disclosures expressly state the record includes a "post default payment summary." Exhibit B, JBLLC 017. Referring to the obligation as in default as of March 29, 2015 is not inconsistent with the statute of limitations because the date of suit was impacted by the post-default partial payments, the last payment on September 15, 2016, choice of law elected under the contract, and conflicts of law principles applicable in Texas courts, discussed below. Paragraph 8 of the unserved complaint is not a false representation, as the date of default is correct, but in this case, it is not the date by which to measure the start date for the running of the statute of limitations. *See infra; see also Ojeda v. Dynamic Recovery Sols.*, No. EP-18-CV-180-KC, 2019 WL 623856, at *3 (W.D. Tex. Jan. 7, 2019):

When an agreement contains a choice-of-law provision, Texas courts apply the procedural law of the forum state and the substantive law of the parties' chosen state.. *Healthtronics, Inc. v. Lisa Laser USA, Inc*, 382 S.W.3d 567, 576–77 (Tex. App. 2012). As for the consequences of partial payments on time-barred debt, "under the conflicts of law rules in [Texas], courts must look to the foreign state's law to determine what effect a partial payment of a debt incurred and payable in such foreign state will have on the Texas four-year statute of limitation." *Velde v. Swanson*, 679 S.W.2d 627, 629 (Tex. App. 1984) (citing Citibank Nat'l Ass'n v. London, 526 F. Supp. 793 (S.D. Tex. 1981); *Hobbs v. Hajecate,* 374 S.W.2d 351 (Tex. App. 1964) ). In other words, whether a partial payment restarts a limitations period is substantive law. *See id.* (holding that the foreign state's substantive law governs and then applying the foreign partial payment law); see also Kenneth B. Sills, 12A Texas Jurisprudence 3rd, Conflict of Laws § 50 (3rd ed. 2018) ("Although the limitation of an action is controlled by the forum, the substantive laws of another state may determine when the statutory period begins to run."). Texas courts, therefore, generally apply the partial payment rule of the state the parties selected in their choice-of-law clause. See *Healthtronics*, 382 S.W.3d at 576–77.

Thus, to the extent the Amended Complaint takes issue with the state court complaint's assertion that, "On or about March 29, 2015, Defendant has ceased making payments and thus defaulted on the obligations as stated in the contract," that statement is true and not a materially misleading statement. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411; *Lee v. Javitch, Block & Rathbone LLP*, 601 F.3d 654, 657, n. 2. Section 1692e "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph P'ships*, 557 F.3d 755, 757–58 (7th Cir. 2009). While not a model of clarity, paragraph 8 is materially true and correct, as the assertion that Gilani defaulted is clearly true, and as the records clearly show he did cease making payments between March 2015 and March 2016, and he has made no payments since September 2016.

**D.     EXHIBIT A DOES NOT CONTAIN A STATEMENT VIOLATING 15 U.S.C. § 1692e(2) BECAUSE (i) THE AVAILABILITY OF AN AFFIRMATIVE DEFENSE WAS EVIDENT TO PLAINTIFF'S COUNSEL AND (ii) THE CLAIM IS NOT TIME BARRED.**

Shortly after providing Javitch's initial disclosures (less than two hours), counsel for Gilani responded the same day by stating: "Something does jump out at me. Paragraph 8 of the suit says the default date was March 29, 2015. If the lawsuit was filed August 26, 2019, does JB have a SOL problem? I'd have to amend or replead but that easily done." See Exhibit C, p. 2. Javitch responded shortly thereafter that the claim was governed by either one of two statutes of limitations, and in either case, the claim was timely filed.[8] *Id*. at p. 1.

Clearly, any concern over being misled or deceived was entirely mitigated here by the watchful eyes of counsel for Gilani, who readily claimed to identify an affirmative defense available to his client within two hours of examining Javitch's records. Exhibit C, p. 2. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1413 ("to determine whether a statement is misleading normally 'requires consideration of the legal sophistication of its audience.'")(*quoting Bates v. State Bar of Ariz.*, 433 U.S. 350, 383, n. 37, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)).

In this case, it would serve no purpose to allow this FDCPA claim to proceed beyond the pleadings – Gilani's counsel's theory and Javitch's theory can both be put to the test in the state court action if and when the complaint is served.

Beyond the fact that providing a complete disclosure of the facts to counsel for Gilani by providing Exhibit B cannot be misleading as a matter of law, Javitch also contends that the state court claim is not time-barred.

First, Javitch suggests that the claim is governed by a six year statute of limitations. Tex. Bus. & Com. Code Ann. § 3.118. The agreement contains an unconditional promise to pay to the order of the lender the principal and interest sums of money lent to Gilani in accordance with the

---

[8] While beyond the scope of this motion, the parties exchanged further emails to verify the partial payments made by Gilani in 2016 and they are unlikely to be disputed.

terms of the agreement. Tex. Bus. & Com.Code Ann. § 3.104(a)(2), (e); *Crego v. Lash*, No. 13-12-00100-CV, 2014 WL 1272220, at *5 (Tex. App. Mar. 27, 2014). Exhibit B, JBLLC 001 (quoted above), JBLLC 003 ¶ A.

Second, even if the claim is not governed by the six year statute applicable to negotiable instruments, Javitch suggests that the claim was timely filed under the four year statute of limitations, Civil Practice & Remedies Code § 16.004. Gilani's obligation is governed by a written agreement that includes a choice of law clause calling for the application of Ohio law. Exhibit B, JBLLC 004 (quoted above). Texas courts apply Texas choice of law rules to identify law governing the obligation to determine the effect of partial payments. *Ojeda v. Dynamic Recovery Sols., supra.* Under Texas conflicts of law rules, the Court is required to apply Ohio partial payment rules to the question. *Butler v. Merchants National Bank of Mobile,* 325 S.W.2d 229, 231 (Tex.App.1959), *Bott v. Am. Hydrocarbon Corp.*, 441 F.2d 896, 900 (5th Cir. 1971), *Citibank, Nat. Ass'n v. London*, 526 F. Supp. 793, 805 (S.D. Tex. 1981).

Under Ohio law, R.C. § 2305.08, partial payments extend the statute of limitations until the date of the final partial payment. *Slack v. Cropper*, 2001-Ohio-8894, 143 Ohio App. 3d 74, 84, 757 N.E.2d 404, 411. Here, the last payment listed on the account made to TSI was dated September 15, 2016, in the amount of $33.34. Exhibit B, JBLLC 018.

As measured by the date of last payment on September 15, 2016, suit filed on August 26, 2019 was timely filed – approximately three years.

Ultimately, it is not necessary for this Court to decide the issue of whether the state court action was timely or not. If Gilani wishes to argue otherwise, he can make those arguments in state court. Under the FDCPA, what matters is that Javitch had a good faith basis for filing the action and did not file it knowing it was time-barred. *Simmons v. Miller, supra.*

If Javitch is correct on either construction of the Texas statute of limitations applicable to this claim above, the Court cannot find the state court filing violated the FDCPA; and if not, the court must also afford Javitch the same leeway available to counsel for Gilani to test its position in state court.

## VI.     CONCLUSION

For all the foregoing reasons, Javitch Block LLC respectfully prays that the Court grant its motion to dismiss, find the complaint fails to state a claim upon which relief may be granted, dismiss this action, and for such other and further relief that the Court deems just and proper under the circumstances.

Respectfully Submitted,

/s/ Michael D. Slodov
Michael D. Slodov, OH SCR #0051678
JAVITCH BLOCK LLC
1100 Superior Ave., 19th Floor
Cleveland, OH 44114
(866) 881-2400 ext. 2781
Direct (440) 318-1073
(fax) (216) 685-3039
mslodov@jbllc.com

Attorneys for Defendant
Javitch Block LLC

15